IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OLDENDORFF CARRIERS GMBH & CO. KG § § § vs. § § TOTAL PETROCHEMICALS & REFINING § USA, INC., TOTAL SPECIALITIES USA, § INC., PELICAN ISLAND STORAGE § TERMINAL LLC. f/k/a PELICAN ISLAND § STORAGE TERMINAL, INC. f/k/a/ § GALVESTON TERMINALS, INC., and § BUFFALO MARINE SERVICE, INC. § | No. 4:14-cv-00129 Admiralty - FRCP 9(h) |

TOTAL PETROCHEMICALS & REFINING USA, INC.'S
OBJECTIONS TO UNIPEC AMERICA, INC.'S SUMMARY JUDGMENT EVIDENCE
AND RESPONSE TO UNIPEC AMERICA, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE DISTRICT COURT:

COMES Total Petrochemicals & Refining USA, Inc. ("Total" or "TPRI") and for its Objection to Unipec American, Inc.'s Summary Judgment Evidence and Response to Unipec America, Inc.'s ("Unipec") Motion for Partial Summary Judgment respectfully shows the following:

## Background

Total contracted to purchase approximately 10-13,000 barrels of ISO 8217 grade high sulphur RMG 380 fuel oil from Unipec. Total then contracted with the charterers of two vessels, the FLORIANA (Oldendorff) and the DEPRANOS (Intergra8) to sell the bunker fuel to them. Total hired Buffalo Marine to pick up the bunker fuel from Unipec's leased tank at Pelican Island Storage Terminal and deliver it to the two ships. Both ships experienced issues with the fuel shortly thereafter.

Oldendorff has filed suit, asserting various tort, product liability and contract theories of recovery (Doc. 11). Total cross-claimed against Unipec, asserting that it never physically handled the product and should be entitled to indemnity (Doc. 48).[1] Unipec has filed a motion to dismiss Oldendorff's tort and product liability claims (Doc. 24) and more recently, a motion for partial summary judgment against Oldendorff's implied warranty claims and Total's indemnity claims (Doc. 58).

Total is a non-manufacturing seller of the subject bunker fuel. Unipec sold the bunker fuel to TPRI which then sold the fuel to Oldendorff. As a key component of the sales agreement, Unipec expressly affirmed that the fuel it was selling to Total was fuel that would meet ISO 8217 specifications.

Unipec argues therein that Total is not entitled to either statutory or contractual indemnity on its implied warranty claims. In so doing, Unipec has ignored the essential facts of this case, its own express warranties, and misconstrued case law. Because both Maritime and Texas law reject the arguments Unipec raised in its motion for summary judgment, it must be denied.

### Objection to Unipec's Summary Judgment Evidence

As a threshold matter, TPRI objects to Unipec's summary judgment evidence. Unipec relies on the declaration of Oleg Li ("Li Declaration") that is hearsay, speculative, violates the best evidence rule, conclusory and not based on Li's personal knowledge. As Li notes in the first sentence of his declaration, he is a risk manager for Unipec. Thus, Unipec has not laid the foundation as to how Li is in any way qualified to discuss phantom test results as he attempts to do in paragraph 3 of his declaration. Those statements in paragraph 3 constitute hearsay and should not be considered. *See* FED.

---

[1] Unipec has not answered TPRI's cross-claim and therefore, has not raised any affirmative defenses.

R. E<small>VID</small>. 802. In addition, Mr. Li did not attach the results of any test, and his statements are in violation of the best evidence rule. See F<small>ED</small>. R. E<small>VID</small> 1002. Finally, Total objects to Li's statement that the test results did not show any contaminants as conclusory, not based on his personal knowledge and speculative.

TPRI objects to the foregoing sections of Li's Declaration on the basis of hearsay and the best evidence rule. See F<small>ED</small>. R. E<small>VID</small>. 802, 1002; *Warfied v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56); *United States v. Chaney*, 299 F. App'x 447, 455 (5th Cir. 2008) ("the best evidence rule states that, '[i]n proving the contents of a writing, recording, or photograph, where the terms of the content are material to the case, the original document must be produced unless it is shown unavailable for some reason other than the serious fault of the proponent, or unless secondary evidence is otherwise permitted by rule or statute."). TPRI further objects to the statements in paragraph 3 of the Li Declaration as they contain nothing more than Unipec's subjective beliefs and conclusory allegations. *Moreno v. Brownlee*, 85 F. App'x 23, 26, (5th Cir. 2004). Cconclusory allegations supported by a conclusory affidavit will not suffice. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 476 F.3d 337, 345 (5th Cir. 2007). Because Li's Declaration consists largely of hearsay statements and testimony that is speculative, conclusory in nature and not based upon his personal knowledge, Unipec requests that the Court sustain its objections and strike the above-reference portions of Li's Declaration.

## **Summary Judgment Evidence**

TPRI relies upon the summary judgment evidence attached hereto; namely:

3

Ex. A, the Declaration of Diane Culpepper, with attachments 1 and 2.

Ex. B, ISO 8217: 2010 specification.

## Argument and Authorities

Unipec is obligated to indemnify Total for the damages Total may incur in the event Unipec's fuel is found defective.  Under the sales agreement between TPRI and Unipec, Unipec expressly warranted that the subject bunker fuel complied with ISO 8217 standards.  Ex. A, att. 1, clauses 5 and 20.  The ISO 8217 spec states that RMG 380 shall not contain "any added substance of chemical waste which jeopardizes the safety of ships or adversely affects the performance of machinery".  *See* Exhibit B, ISO 8217:2010, §5.1.  Oldendorff has alleged that Unipec's bunker fuel did not conform to ISO standards, directly jeopardized the vessel's engines or fuel systems, supplied and caused damage to the vessel's machinery.  Accordingly, Unipec has breached its obligations under the sales agreement, giving rise to TPRI's cross-claim for indemnity.

### A. **TPRI's cross-claim for indemnification is valid based on Unipec's Express Warranties.**

As Unipec notes it its Motion, the agreement between Unipec and TPRI purports to disclaim certain implied warranties.[2]  However, Total has not premised its cross-claim for indemnification solely on implied warranty claims.  Rather, the crux of TPRI's cross-claim for indemnification is predicated on Unipec's express warranty.

Unipec incorrectly concludes that merely because general maritime law governs its dispute with Oldendorff, indemnification does not exist.  TPRI agrees that maritime law controls the claims for injury that arises out of alleged strict liability or negligence. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).

---

[2]  TPRI contends that the disclaimer is invalid.  See pp. 10-11.

4

However, contrary to Unipec's arguments, breach of warranty claims still exist, even if they are governed by state law. *Id.* Further, maritime law holds that the innocent seller of an alleged defective productive is entitled to defense and indemnity. *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985). TPRI was a seller that sold Unipec's product to Oldendorff.

Indemnity is available for an innocent seller of a defective product, such as TPRI, "upon whom the law imposes responsibility—under a theory of constructive liability or imputed fault—from a [manufacturer] that is guilty of actual fault. *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833, n. 12 (5th Cir. 1992) (quoting *Marathon Pipe Line Co.*, 761 F.2d at 236). Here the fault lies in the fact that Unipec did not provide bunker fuel that met ISO 8217 specifications.

In *Marathon Pipe Line*, the Fifth Circuit held that the user of a defective product which injured the plaintiff was entitled to recover indemnity from the manufacturer of the product. The court based its decision in part on the Restatement of Torts 2nd 886b(2)(d) which provides:

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.
(2) Instances in which indemnity is granted under this principle include the following:
   d. The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

The comment to 886b(2)(d) states:

> The supplier of defective chattel is required to indemnify a retailer regardless of whether his tort liability is based on

negligence or in strict liability so long as the retailer has failed to discover the defect before selling the product.

As previously noted, Exhibit A establishes that the subject bunker fuel was delivered to Plaintiff without any alteration by TPRI. TPRI had no control over the manufacture of the bunker fuel, and did not know of Unipec's blending practices or the alleged defects, and is consequently entitled to indemnity. Unipec's summary judgment as to contractual indemnity must fail as a matter of law.

### B. TPRI's cross-claims for indemnification based on a finding of breach of express warranties are not limited.

Unipec's motion is silent on the subject of express warranties under the sales agreement. Express warranties survive any valid limitation of implied warranties, and are enforceable as given. An express warranty is created when any affirmation of fact or promise is made by a seller to a buyer that relates to the goods or services sold and becomes part of the basis for the bargain. TEX. BUS. & COM. CODE § 2.313; *Lyda Constructors, Inc. v. Butler Mfg. Co.*, 103 S.W.3d 632, 637 (Tex. App—San Antonio 2003, no pet.); *Rinehart v. Sonitrol of Dallas, Inc.*, 620 S.W.2d 660, 662-63 (Tex. Civ. App.—Dallas 1981, ref. n.r.e.). "An express warranty forces the seller to stand behind the merchandise on that count." T. Quinn, QUINN'S UNIFORM COMMERCIAL CODE COMMENTARY AND LAW DIGEST, ¶2-313 [A][11], at p. 921 (2d Ed. 2009). Express warranties are always an essential aspect of the individual bargain, and "go so clearly to the essence of the bargain that words of disclaimer in a form are repugnant to the basic dickered terms." TEX. BUS. & COM. CODE § 2.313 cmt 1. Where an express warranty is established, it can only be excluded or modified pursuant to Section 2.316(a) of the Texas Business and Commerce Code, which requires that exclusions and modifications

6

be "reasonable" as consistent with the express warranties made. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 676-77 (Tex. 2004). Thus, if a seller wishes to limits its liability, the answer is not in disclaimers, but in its care to only promise what it can deliver. *See,* QUINN'S UNIFORM COMMERCIAL CODE COMMENTARY AND LAW DIGEST, ¶2-313 [A][11], at p. 922. Unipec's attempt to apply its disclaimer crashes head-on into its express warranty to TPRI and is rendered without force or effect. Accordingly, Unipec may not refuse to indemnify TPRI for the alleged damages that it is suffering and may suffer as a direct result of Unipec's sale of allegedly defective fuel.

The Warranty provision cited by Unipec states in part:

EXCEPT FOR WARRANTY OF TITLE, NO CONDITIONS OR WARRANTIES EXPRESS OR IMPLIED OF MERCHANTABILITY, FITNESS, OR SUITABILITY OF THE OIL FOR ANY PARTICULAR PURPOSE OR OTHERWISE ARE MADE BY SELLER OTHER THAN THAT THE OIL CONFORMS, WITHIN ANY TOLERANCES AS STATED AND TO THE EXTENT OF THE REPRODUCIBILITY AND REPEATABILITY OF THE TEST METHOD USED, TO THE DESCRIPTION HEREIN.

See Exhibit A, at 3 (emphasis supplied).

Per the above and the Clause 5 description, Unipec expressly warranted that the bunker fuel would meet ISO 8217 specifications, which requires fuel to be free from "any added substance or chemical waste which jeopardizes the safety of ships or adversely affects the performance of the machinery." The exclusion of warranty provision thus cannot now be used by Unipec to negate or limit its express warranty because that was a specific product specification. Unipec's summary judgment as to contractual indemnity must fail.

### C. TPRI is Entitled to Statutory Indemnity from Unipec.

Unipec also essentially argues that because general maritime law applies, TPRI is not entitled to statutory indemnity under Chapter 82 of the Texas Civil Practice and Remedies Code. Motion at 8-9. Unipec predicates its argument on the erroneous

7

assumption that the Chapter 82's indemnity obligations are in conflict with and are thus preempted by general maritime law. *Id.*

Unipec rests its arguments on the proposition that established rules of general maritime law may override the Chapter 82 indemnity obligations. This position is contrary to well-defined Texas and Fifth Circuit jurisprudence as there is no conflict between general maritime law and the Chapter 82 indemnity obligations that are owed by a manufacturer to a seller, particularly under facts like those presented in this case. Federal maritime law is not all inclusive, allowing for state law to be used to supplement it. *Hebert v. Outboard Marine Corp.*, 638 F. Supp. 1166, 1170 (E.D. La. 1986). Other district courts in the Fifth Circuit have the state products liability statutes to maritime products liability law. *See Kelly v. Porter, Inc.*, 687 F.Supp.2d 632, 639 (E.D.La., 2010).

Moreover, despite Unipec's statements to the contrary, the Fifth Circuit has repeatedly held that strict products liability is part of the general maritime law. *See Vickers v. Chiles Drilling Co, et al.*, 822 F.2d 535, 538 (5th Cir. 1987); *East River Steam Ship Corp. v. Transamerica Delaval*, Inc., 476 U.S. 858, 90 L. Ed. 2d 865, 106 S. Ct. 2295 (1986). Unipec ignores important precedent that the application of federal maritime law does not preclude the application of state law to supplement any interstitial gaps in maritime law. Certainly, where there is no uniform federal rule, courts applying federal maritime law may adopt a state's law by express or implied reference or "by virtue of the interstitial nature of federal law." *Hebert*, 638 F. Supp. 1166 (E.D. La. 1986) (quoting *Palenstina v. Fernandez*, 701 F. 2d 438 (5th Cir. 1983); *Felarise v. Cheramie Marine, LLC*, 2010 WL 375229 (E.D. La. 2010) (relying on *Yamaha Motor Corp. USA v. Calhoun*, 116 S.Ct. 619, 629 (1996) to allow state law supplementation of the general

maritime law); *Kelly v. Bass Enterprises Prod. Co.*, 17 F.Supp.2d 591 (E.D.La. 1998). The only restriction is that the state law or rule to be applied should not contravene a clearly established rule of general maritime law or impair the principles of national uniformity underlying federal maritime statutes. *Byrd v. Byrd*, 657 F.2d 615 (4th Cir. 1981). *See also*, *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 75 S.Ct. 368 (1955). As aptly stated in *Byrd*, "admiralty law at times looks to state law either statutory or decisional to supply the rule of decision where there is no admiralty rule on point." Indeed, much of general maritime tort law is borrowed state law. *See,* 1 T. J. Schoenbaum, Admiralty and Maritime Law, Section 4-2 (4th ed. 2001).

Regardless of whether Plaintiff's claims arise under maritime or state law, TPRI is entitled to indemnity. Under maritime law, a non-negligent tortfeasor is entitled to indemnity from an actually negligent tortfeasor. *See Marathon Pipe Line Co., supra,* 761 F.2d at 236. The term "non-negligent tortfeasor" applies to a defendant on which the law imposes responsibility even though the defendant "committed no negligent acts." *Id.* Additionally, the user of a defective product that injured the plaintiff is entitled to recover indemnity from the manufacturer of the product. *Id.* This rule applies to a defendant such as TPRI, which is liable under what is essentially a theory of constructive or vicarious liability. *See id.* Thus, under Texas law, an innocent seller is entitled to indemnity from the manufacturer on a defective product or negligent manufacture claim. *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 831 (5th Cir. 1992); *Duncan v. Cessna Aircraft, Inc.*, 665 S.W.2d 414, 432 (Tex. 1984).

Here, the indemnity obligations whether under maritime or Texas law are in concert with one another. The issue here is whether the subject bunker fuel met certain

9

ISO specifications as expressly warranted by Unipec. And because TPRI can demonstrate at trial that Unipec did not provide conforming product, TPRI will be entitled to indemnity Unipec under both Texas and maritime law. Thus, the case law is clear that indemnity would apply.

TPRI's Cross-Claim clearly meets all of the requirements for statutory indemnification. Dkt. 48. Significantly, Unipec fails to cite to any authority in support of its argument that it does not owe statutory indemnity. Further, Unipec's entire argument rests on blatant speculation that comparative fault may be more appropriate in this case and speculation that it would be unfair to impose full liability at this time, and conveniently ignores that plaintiff asserts a claim against TPRI for recovery of damages arising out of property damage allegedly caused by a defective product manufactured by Unipec.

**D.    Unipec's Asserted Disclaimer of Implied Warranties is Invalid.**

Unipec makes a sweeping argument that it has disclaimed implied warranties and that this is valid under Texas law. The Unipec-TPRI contract is governed by New York law. *See* Ex. A, att.1, clause 23. Unipec's motion is devoid of any references to New York law.

The New York Uniform Commercial Code provides that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous." NY CLS UCC §2-316(2). "Warranties of merchantability and fitness for use are implied by" the UCC, therefore, "but may be excluded using the proper language." *Basic*

*Adhesives, Inc. v. Robert Matzkin Co.*, 101 Misc.2d 283, 288, 420 N.Y.S.2d 983, 986 (Bronx Cty. 1979). Thus, "the Uniform Commercial Code allows parties, within limits established by the code, to modify or exclude warranties and to limit remedies for breach of warranty." *Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 402, 244 N.E.2d 685, 687, 297 N.Y.S.2d 108 (1968); *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F.Supp. 286, 304 (S.D.N.Y 1997) ("It is well settled that under New York law, parties to a contract may exclude or modify implied warranties so long as the warranty disclaimer is conspicuous and specific."). The disclaimer must use "'language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.'" *Basic Adhesives*, 101 Misc.2d at 288 (quoting NY CLS UCC 2-316, subd [3] par [a]).

A disclaimer that "does not alert or call the reader's attention to the exclusion of any warranty of fitness for a particular purpose" has been found invalid. *Deven Lithographers v. Eastman Kodak Co.*, 199 A.D.2d 9, 604 N.Y.S.2d 563, 564 (1st Dept. 1993); *Verdier v. Porsche Cars N. Am. Inc.*, 255 A.D.2d 436, 437, 680 N.Y.S.2d 596 (2d Dept. 1998) (summary judgment denied because "[q]uestions exist with respect to whether the disclaimer upon which [defendant] relies was sufficiently conspicuous and whether it was communicated to the plaintiff."). The New York UCC defines "conspicuous," stating that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." NY CLS UCC § 1-201(10). "A printed heading in capitals . . . is conspicuous," as is "[l]anguage in the body of a form" that "is in larger or other contrasting type or color." Id.

11

In this case, the purported disclaimer language is in the same type as the rest of the Unipec-drafted document, and is by no means conspicuous. The disclaimer is therefore invalid. *See also Ethyl Corp. v. Daniel Const'n Co.*, 725 S.W.2d 705 (Tex. 1987).

## Conclusion

Plaintiff has alleged claims of products liability concerning injuries that arise from the subject torch that was manufactured by Unipec. Unipec cannot escape its statutory and contractual obligation to indemnify TPRI in this case. TPRI respectfully requests that the Court deny Unipec's Motion for Summary Judgment.

WHEREFORE, PREMISES CONSIDERED, defendant Total Petrochemicals & Refining USA, Inc. requests that the Court sustain the objections identified herein, strike the above-cited summary judgment evidence, that Unipec's Motion for Partial Summary Judgment be denied, and for such other and further relief to which it may be entitled.

Respectfully submitted,

By: /s/ F. William Mahley
    F. WILLIAM MAHLEY
    Federal ID 2863
    State Bar No. 12836740
    STRASBURGER & PRICE, LLP
    909 Fannin Street, Suite 2300
    Houston, Texas 77010-1036
    (713) 951-5600 – Telephone
    (713) 951-5660 – Facsimile
    Bill.Mahley@Strasburger.com

Attorney-in Charge for Defendant, Total Petrochemicals & Refining USA, Inc.

OF COUNSEL:
Carolyn L. Douglas
State Bar No. 24045800
STRASBURGER & PRICE, LLP
2301 Broadway Street
San Antonio, Texas 78215
Carrie.douglas@strasburger.com

## CERTIFICATE OF SERVICE

    I hereby certify that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via Email, Certified Mail/RRR and/or U.S. First Class Mail, in accordance with the Federal Rules of Civil Procedure on this 7th day of November, 2014.

                                                  /s/ F. William Mahley
                                                  F. William Mahley

1917985.2/SPH/17604/0121/110714