IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OLDENDORFF CARRIERS GMBH & CO. KG, Plaintiff | § § § § | |
| VS. | § § | C.A. NO. 4:14-cv-00129 Admiralty - Rule 9(h) |
| TOTAL PETROCHEMICALS & REFINING USA, INC., TOTAL SPECIALITIES USA, INC., PELICAN ISLAND STORAGE TERMINAL LLC. f/k/a PELICAN ISLAND STORAGE TERMINAL, INC. f/k/a/ GALVESTON TERMINALS, INC., and BUFFALO MARINE SERVICE, INC., Defendants | § § § § § § § § § | |

**PLAINTIFF'S RESPONSE TO UNIPEC AMERICA, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE KEITH P. ELLISON:

Plaintiff Oldendorff Carriers GmbH & Co. KG ("Plaintiff" or "Oldendorff") files this Response to Unipec America, Inc.'s ("Unipec") Motion for Summary Judgment, and respectfully would show:

**I.**

**OBJECTIONS**

As an initial matter, Oldendorff objects to Unipec's motion asserting a disclaimer of warranties as to Oldendorff since Unipec's answer does not assert disclaimer of warranties as an affirmative defense as required by Federal Rule of Civil Procedure 8(c).

Oldendorff next objects to any hearsay statements in the Declaration of Oleg Li (Dkt. No. 58-1), by way of him incorporating statements from an apparent test of the fuel that is not even attached

to Unipec's motion as evidence. Mr. Li does not even identify a company or the name of the supposed inspector that he claims issued a report. Oldendorff further objects to Mr. Li's statements about what the contract says and whether the contract is binding, as those statements are legal conclusions. Lastly, Oldendorff objects to Mr. Li drawing any conclusions about what the alleged tests conclude or show, as no credentials for Mr. Li have been supplied to show that be has the knowledge and expertise to draw such conclusions, the test is not attached to Unipec's motion so that a determination can be made as to what Mr. Li concludes is even accurate. For these reasons, the Declaration of Mr. Li should be struck.

## II.

## RELEVANT FACTS

The following facts, and others discussed herein, are relevant to this Court's decision.

A.  **General Background**.  By way of general background and overview, Oldendorff contracted with Total Petrochemicals & Refining USA, Inc. ("Total") for the purchase of marine bunker fuel.[1]  Unbeknownst to Oldendorff, Total had purchased this fuel from Unipec under a separate contract. (Dkt. No. 58-2). The fuel Oldendorff purchased from Total was loaded at what is now Pelican Island Storage Terminal, LLC (then GTI) onto Buffalo Marine Service, Inc. barge 301. Fuel then was delivered by barge 301 first to the M/V DEPRANOS at Bolivar Roads near Galveston, Texas, and then to the M/V FLORIANA in Lake Charles, Louisiana.[2] The high sulphur fuel that was delivered to the M/V FLORIANA, upon attempted use by the ship, was found to be

---

[1]  *See* Exs. 1 (Stem Confirmation) and 2 (Total Terms and Conditions - 2006).

[2]  *See* Ex. 3 (Buffalo Marine documents for the loading of the barge at GTI, the delivery of fuel to the M/V DEPRANOS and the delivery of fuel to the M/V FLORIANA).

unusable as some substance in the fuel clogged the fuel filter for the ship's main engine.[3] Based upon testing done by DNV Petroleum Services,[4] the vessel owner placed Oldendorff on notice that the fuel purchased by Oldendorff from Total, and loaded in Lake Charles, Louisiana, was unusable because the fuel contained contaminants.[5] Further testing at ITS West Thurrock and ITS Sunbury[6] established through this agreed testing[7] that the samples of the fuel delivered to the M/V FLORIANA did not satisfy the ISO 8217 specification for density and viscosity, and violated Section 5 of the standard because the fuel contained plastic polymeric particulate matter.[8] In short, the fuel purchased by Oldendorff from Total was off specification, and was not usable in the marine application for which it was intended (to fuel a ship's engine).[9] Oldendorff did not even learn about the existence of Unipec, and its role, until after Oldendorff had settled the Vessel Owner's claims under the time charter against Oldendorff. In fact, the undersigned was told that the identity of the manufacturer, which turned out to be Unipec, was confidential, so it could not be disclosed. This is why Unipec

---

[3] See Exs. 4 (notice from the vessel owner's representative to Oldendorff describing the problems encountered), 5 (photographs of the fuel filter) 6 (Defect Report from the M/V FLORIANA) and 7 (notice from the vessel owner to Oldendorff that testing of the fuel shows the presence of contaminants). Oldendorff understands that the M/V DEPRANOS had similar issues with the high sulphur fuel being bad and unusable.

[4] See Ex. 9 (DNV Test Report).

[5] See Ex. 7.

[6] See Ex. 8, Declaration of David A. Edwards, at paragraphs 4-15, and Ex. 10 (the ITS Report). Note that the ISO 8217 2010 table 2 test results are found in Ex. 10 at the page bate stamped OLD- 036.

[7] See Ex. 11, which are the communication where Total agreed to the testing. The agreement was between Oldendorff, the vessel owner and Total.

[8] See Ex. 8 at paragraphs 4 - 15. The full specification is attached as Ex. C to Ex. 8.

[9] Id.

was not sued in Oldendorff's Original Complaint. Oldendorff did not become aware of the identity of the manufacturer, and did not see a copy of the contract between Total Petrochemicals and Unipec until after this lawsuit was filed.

  **B.**   **The Oldendorff/Total Contract**. Under the Stem Confirmation between Oldendorff and Total dated January 10, 2013, Oldendorff ordered a quantity of 385 metric tons ("MTS") of high sulphur fuel oil that was to meet ISO 8217 2010, RMG 380 category (listed at Product #1 on the Stem Confirmation) for delivery to the M/V FLORIANA[10] in Lake Charles, Louisiana, with a projected delivery date of January 17, 2013.[11] Under the heading "Terms," the Stem Confirmation is "Subject to 'Total Petrochemicals & Refining USA, Inc. General Condition of Sale for Bunker Fuel for Ships entered February 2006.'" Sampling of the fuel is to take place at the barge manifold.[12] The Stem Confirmation makes no reference to Unipec, whether as a seller, manufacturer or in any other capacity. To the extent Total had a contract with Unipec, it is not referenced in this agreement.

  In its Disclosures provided in the lawsuit, Total has produced one set of terms and conditions that are dated in 2006, which corresponds to the language under the heading "Terms" in the Stem Confirmation. These terms and conditions are attached as Exhibit 2.

  In the terms and conditions, Section 1, "Agreement" means the sales contract and these terms and conditions. "Seller" is defined as Total. "Sale Contract" means any contract created by

---

[10]   There can be no question that the fuel being purchased under the Stem Confirmation was for use by the M/V FLORIANA. The M/V FLORIANA is specifically named in the Stem Confirmation under the "Vessel" heading, and the fuel grades purchased are fuels for use specifically in marine vessel operations.

[11]   *See* Ex. 1. Oldendorff also ordered 115 MTS of low sulphur fuel oil, but that fuel is not a part of the lawsuit.

[12]   *Id*.

acceptance by Seller of an order placed by Buyer for **Marine** fuels, including special terms agreed to in the Sale contract. (emphasis added). Section 2(a) confirms that the fuel is being provided for marine vessel application. In Section 2(b), "Seller warrants only that the **Marine** fuels shall comply with the grades selected by the Buyer, shall be of a satisfactory quality and that their characteristics will correspond to those generally offered at the relevant port of delivery. Unless otherwise agreed and stated in the Sale Contract, the **Marine** fuels shall be based on ISO Standard 8217/2005 or any subsequent amendment thereof at the time of the Sale Contract." (emphasis added).[13]

On page 5 of the Total terms and conditions, Section 10 entitled "Warranty" states **"OTHER THAN THE WARRANTY IN SECTION 2(b) HEREIN (GRADES/QUALITY), SELLER MAKES NO OTHER WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AND DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE SUITABILITY OF THE MARINE FUELS FOR USE, CONSUMPTION, OR ANY OTHER APPLICATION(S). BUYER IS SOLELY RESPONSIBLE FOR THE SELECTION OF MARINE FUELS AND THE DETERMINATION OF THE SUITABILITY OF THE MARINE FUELS FOR USE, CONSUMPTION, OR ANY OTHER APPLICATION."**[14] Under Section 2(b), the fuel was to conform to ISO 8217 010. Unipec is not mentioned in this paragraph.

---

[13] *See* Ex. 2 at p. 1 (T-000035). As stated in the Stem Confirmation, the version of the standard being applied is the 2010 version. *See* Ex. 1 under heading Product #1.

[14] *See* Ex. 2 at p. 5.

Clause 23(a) on page 8 of the terms and conditions states in pertinent part: "This Agreement constitutes the entire agreement between the parties and supercede [sic] any prior or contemporaneous agreements and understandings, whether oral or written, with regard to the subject matter...." Upon a reading of the Stem Confirmation and the terms and conditions, no reference to Unipec is found. Oldendorff was not informed of the existence of Unipec through the Oldendorff/Total contract.

C. **The Total/Unipec Contract**. The Total/Unipec contract upon which Unipec relies in its Motion for Partial Summary Judgment, defines "Seller" in clause 1 as Unipec, and "Buyer" in clause 2 as Total. (Dkt. No. 58-2 at p. 1 of 7). Oldendorff is not referenced anywhere in the contract as a party or otherwise.

The Product being purchased in the contract is "Fuel Oil (RMG 380)," as stated in clause 3, and the Quality is expressly stated in clause 5 to be "Meeting RMG-380 Specifications in accordance with ISO 8217:2010." (Dkt. No. 58-2 at p. 1 of 7). As counsel for Unipec points out in its motion, the Total/Unipec contract states in clause 20: "EXCEPT FOR WARRANTY OF TITLE, NO CONDITIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR SUITABILITY OF THE OIL FOR ANY PARTICULAR PURPOSE OR OTHERWISE, ARE MADE BY SELLER **OTHER THAN THAT THE OIL CONFORMS, WITHIN ANY TOLERANCES STATED AND TO THE EXTENT OF REPRODUCIBILITY OF THE TEST METHOD USED, TO THE DESCRIPTION CONTAINED HEREIN**." (emphasis added). (Dkt. No. 58-2 at p. 3 of 7). Unipec also brings to the Court's attention clause 17 of the contract, which states "MUTUALLY AGREED INDEPENDENT INSPECTOR. COST TO BE SHARED EQUALLY BETWEEN BUYER AND SELLER. INSPECTORS RESULTS TO

BE FINAL AND BINDING. QUALITY WILL BE DETERMINED BY BARGE COMPOSITE." (Dkt. No. 58 at p. 2 of 11).[15] However, there never was a mutual agreement between Unipec and Oldendorff, nor could there have been, since Oldendorff did not even know about Unipec.

Next, and perhaps most tellingly, Unipec did not bring to the Court's attention clause 23 of the contract. It states in pertinent part : "THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REFERENCE TO ITS LAWS ON CONFLICTS ...." (Dkt. No. 58-2 at p. 4 of 7). Also important to the Court's analysis is clause 24, which states in pertinent part: "NOTHING IN THIS AGREEMENT SHALL BE CONSIDERED OR CONSTRUED AS CONFERRING ANY RIGHT OR BENEFIT ON A PERSON NOT A PARTY TO THIS AGREEMENT AND THE PARTIES DO NOT INTEND THAT ANY TERM OF THIS AGREEMENT SHOULD BE ENFORCEABLE, BY VIRTUE OF THE CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999, BY ANY PERSON WHO IS NOT A PARTY TO THIS AGREEMENT." (Dkt. No. 58-2 at p. 5 of 7). Clearly, given this language, Oldendorff is not a third-party beneficiary to the Total/Unipec contract. Lastly, in terms of facts, it must be noted by the Court that <u>all</u> of the headings contained in the Total/Unipec contract are all capital letters and bold, and all of the provisions in each clause of the contract are all capital letters. The disclaimer upon which Unipec relies is no different in type set and font than any of other provisions in the contract, so it is <u>not</u> set apart from the other provisions.

---

[15] Why Unipec attempts to assert this clause against Oldendorff, a non-party to the contract, is unknown. Oldendorff made no such agreements with Unipec.

II.

**SUMMARY JUDGMENT STANDARD**

This Court knows well[16] the applicable standard to determine whether summary judgment should be granted. Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56©).

Unipec has the initial burden of proving the absence of a genuine issue of material fact, and must establish each element of its defense as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). The Court should grant the motion only if, viewing the evidence in the light most favorable to the nonmovant, there are no genuine disputes of material fact. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000). To avoid summary judgment, the nonmovant then must introduce evidence of "[s]pecific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2502, 2510 (1986). When there are two opposing versions of the facts, if one is blatantly contradicted by the record, the court cannot adopt that version for summary judgment purposes. *E.g. Scott v. Harris*, 550 U.S. 372, 380 (2007).

Review of a summary judgment is *de novo*. *Hasty v. Trans Atlas Boats, Inc.*, 389 F.3d 510, 512 (5th Cir. 2004).

---

[16] *Oldham v. Thompson/Center Arms Co.*, 2013 U.S. Dist. LEXIS 111709 (S.D. Tex. 2013)(Ellison, J.)(attached as Ex. 13).

### III.

### **ARGUMENTS**

In its motion, Unipec argues that it is entitled to Summary Judgment on Oldendorff's implied warranty claims because Unipec disclaimed <u>all</u> implied warranties in its contract with Total,[17] and this disclaimer is good against Oldendorff, who had a subsequent contract to purchase fuel with Total. In reaching this conclusion, Unipec, ignoring its own choice of law clause in its contract with Total, states that its claims against Oldendorff are governed by Texas law, apparently, but not expressly stated, under what is known as the "maritime but local doctrine." It is clear that Unipec wants to apply Texas law because the Texas Supreme Court issued an opinion[18] after this case was filed potentially beneficial to Unipec. Applying Texas law, Unipec argues that its disclaimer of warranties in its contract with Total, of which Oldendorff had no knowledge, is "conspicuous" under the Uniform Commercial Code. This, Unipec argues, allows it to disclaim all implied warranties.

---

[17] In the same motion, Unipec seeks summary judgment against Total. At least under Texas law, if Unipec's motion against Total is unsuccessful, its motion against Oldendorff must fail, since the same contractual warranty provision is involved. The significant difference between Oldendorff and Total, in terms of the Unipec/Total contract, is that Oldendorff did not even know about Unipec and the Unipec/Total contract, so it never had an opportunity to take a "disclaimer" into consideration when making its deal with Total. The main reason for the conspicuous requirement is so a party can take the disclaimer into consideration when making a deal, particularly with regard to setting the price. Obviously, Oldendorff could not do this. Before the *Man Engines* case, the disclaimer in the Unipec/Total contract could not have been used against Oldendorff, because Oldendorff had not seen the disclaimer. *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 830 F.Supp.2d 235, 278-79 (S.D. Tex. 2011); *Womco, Inc. V. Navistar Int'l Corp.*, 84 S.W.3d 272, 279 (Tex.App.–Tyler 2002, no. pet.).

[18] *Man Engines & Compnents, Inc. v. Shows*, 434 S.W.3d 132 (Tex. 2014).

Lastly, Unipec argues that under the *Man Engines* case, Oldendorff can get no greater warranty than Total, which Unipec incorrectly argues is none.[19] 434 S.W. 3d at 140.

In concluding that Oldendorff has no implied warranty claims against it, Unipec's arguments have several shortcomings.[20] First, Unipec fails to address and apply any facts to the actual disclaimer language in its contract with Total. These facts establish that the fuel, by contract, had to conform to ISO 8217 2010. It did not. Second, Unipec fails to properly apply the maritime but local doctrine to the facts before this Court. Lastly, Unipec's assertion that its disclaimer, at least as to Oldendorff (a non-party to Unipec's contract with Total), is conspicuous misses the mark, not only in Texas, but in other states, as discussed in the Texas Supreme court case of *Cate v. Dover Corp.*, 790 S.W.2d 559, 559-61 (Tex. 1990). Each of these issues is discussed in more detail below.

A. **If the Disclaimer is Conspicuous under the UCC, as alleged, which it is not,[21] what does the Disclaimer disclaim**? Without agreeing that the disclaimer Unipec asserts from the Unipec/Total contract is conspicuous,[22] and expressly disagreeing that it is, at least as to Oldendorff, this Court must analyze what the disclaimer says, in order to determine what is disclaimed, if anything. Clause 20 of the Unipec/Total contract reads:

**20. WARRANTIES**

---

[19] *See* Dkt. No. 66, and the arguments made therein by Total.

[20] According to the arguments being made by Unipec to this Court, a manufacturer/producer can sell bad fuel to an end user, and not have any liability under tort or contract.

[21] *See* Section C below.

[22] It is not. *See* Section C below.

EXCEPT FOR WARRANTY OF TITLE, NO CONDITIONS OR WARRANTIES, EXPRESS OR IMPLIED,[23] OF MERCHANTABILITY, FITNESS OR SUITABILITY OF THE OIL FOR ANY PARTICULAR PURPOSE OR OTHERWISE, ARE MADE BY SELLER OTHER THAN THAT THE OIL CONFORMS, WITHIN ANY TOLERANCES STATED AND TO THE EXTENT OF REPRODUCIBILITY AND REPEATABILITY OF THE TEST METHOD USED, TO THE DESCRIPTION CONTAINED HEREIN.

The critical language in the disclaimer from Oldendorff's perspective is "OTHER THAN THAT THE OIL CONFORMS ... TO THE DESCRIPTION CONTAINED HEREIN.[24] The description of the fuel is found in clauses 3 and 5 of the Unipec/Total contract. Clause 3 states the Product is RMG 380, which is marine fuel oil used for maritime vessels. Clause 5 states that the Quality of the RMG 380 will meet RMG-380 specifications in accordance with ISO 8217:2010. In an effort to support its position that the fuel complied with the required specification, Unipec cites to clause 17 of the contract, and concludes that the "results of the inspector did not show any contaminants in the bunker fuel." (Dkt. No. 58 at p. 2). By its very language, clause 17 requires mutual agreement. (Dkt. No. 58-2 at pp. 2-3 of 7). Because Oldendorff did not even know about Unipec, there was no mutual agreement between the two regarding an independent inspector.[25]

---

[23] Oldendorff was not a party to this contract, so there could be no express warranty to Oldendorff through the contract. The only warranty that potentially can be disclaimed through this clause is the implied warranties of merchantability and fitness for a particular purpose.

[24] Generally specking, clauses that purport to limit a party's legal responsibility are strictly construed, and must clearly express the intent of all parties whose liability is altered by the agreement to be given legal effect. *Nathaniel Shipping, Inc. v. General Electric Co.*, 920 F.2d 1256, 1266 (5th Cir. 1991). Especially in circumstances like those here, where Unipec seeks to enforce a clause in its contract against a non-party to the contract, the clause should be strictly construed against the drafter of the contract, which was Unipec. Oldendorff asserts that the fuel must comply with any description of the fuel in the Unipec-drafted contract with Total, and particularly with all of the ISO 8217 2010 standard.

[25] Oldendorff is not bound as a third-party beneficiary to the Unipec/Total contract due to clause 24 of the contract. (Dkt. No. 58-2 at p. 5 of 7, clause 24).

Consequently, Oldendorff is not bound by clause 17, and cannot be bound by the results of any such inspection. Further, there is no inspection report or Declaration from any mutually agreed inspector attached to or referenced in Unipec's motion, so this argument fails for lack of supporting proof. The only possible evidence supporting such a position is the hearsay statement of Mr. Li., which is not proper summary judgment evidence and which should be struck in its entirety for the reasons asserted in the above objection.

As a matter of scientific proof and documentary evidence attached to this response, the contrary is established. Tests that were performed by DNV[26] and by ITS West Thurrock and ITS Sunbury[27] on samples of the fuel taken at the time the fuel that was delivered to the M/V FLORIANA[28] uniformly show that the fuel did not comply with ISO 8217 2010, as it was required to do, and as was impliedly warranted to Oldendorff by Unipec.[29] Unipec's contractual warranty provided above is that the fuel would apply to the standard, and it did not.[30] At the very least, the attached evidence creates a fact question on the issue of whether the fuel complied with the ISO 8217 2010 standard that precludes summary judgment.

---

[26] *See* Ex. 9.

[27] *See* Exs. 8 and 10.

[28] Note well that Buffalo barge 301 was loaded at the terminal on January 15, 2013. This fuel was not loaded onto the M/V FLORIANA until January 20, 2013.

[29] Oldendorff had no contract with Unipec, so the warranties available to Oldendorff are the implied warranty of merchantability and fitness for a particular purpose (marine fuel oil for use by a vessel engine).

[30] In fact, based upon the attached evidence, the Court should grant Oldendorff summary judgment against Unipec.

As is detailed in the General Facts section above, the attached evidence, and as is discussed in great detail in the attached Declaration of David A. Edwards, who is an analytical chemist and Oldendorff's retained expert, the fuel delivered to the M/V FLORIANA created problems when the vessel attempted to use the fuel.[31] The fuel filter for the ship's main engine became repeated clogged, and ultimately the ship was unable to use the fuel.[32] Total was notified.[33] An agreement was finally reached between the vessel owner, Total and Oldendorff to test certain agreed fuel samples,[34] first at ITS West Thurrock and then at ITS Sunbury. Two samples were tested, one taken from the barge manifold during the loading of the M/V FLORIANA, and the other taken at the ship's manifold during loading.[35] Both samples were taken before the fuel reached the ship's bunker tanks.[36] The results of this testing establish that the fuel was off-specification for density and viscosity, and, because it contained plastic polymeric particulate matter, was off-specification under Sections 5.2, 5.3 and 5.5 of the ISO 8217 2010 standard.[37] As further evidence that the fuel did not comply with ISO 8217 2010, separate testing by DNV Petroleum Services confirmed that the fuel was off-specification for viscosity, and that the fuel contained this polymeric contaminant.[38] The

---

[31] *See* Exs. 4, 5, 6, 7 and 8.

[32] *Id*.

[33] *See* Ex. 12.

[34] *See* Ex. 11.

[35] *See* Ex. 8 at paragraph 4.

[36] *Id*.

[37] *See* Ex. 8 at paragraphs 4-15, and the referenced test results.

[38] *See* Ex. 9 at p. 1.

attached Declaration of David A. Edwards addresses all of the scientific aspects of the testing he witnessed, what the results were and what they establish. His conclusion, based upon the tests performed, his observations of those tests, and his observations of the actual contaminants in the fuel tested, is the fuel does not comply with the contractually required standard (ISO 8217 2010).[39] For the foregoing reasons alone, Unipec's motion should be denied.

        **B.**     **Maritime but Local - What is it**? Unipec calls for the application of Texas law to Oldendorff's implied warranty claims. (Dkt. No. 58 at p. 4). The cases Unipec cites for this proposition[40] are personal injury cases dealing with local residents of Louisiana involved in incidents in Louisiana where the issue involved was not easily ascertained under the general maritime law of the United States, so the court applied Louisiana, or local law. *Id*. This application of state law in the maritime context is loosely known as the "maritime but local" doctrine. The doctrine, however, is quite complex. As is stated by T.J. Schoenbaum, "there are several theories under which state decisional law or legislation may be applied in maritime cases: (1) borrowing, (2) default, (3) maritime but local, and (4) supplementation. Schoenbaum, *Admiralty and Maritime Law* § 4-2 at pp. 226-27 (5th Ed. 2011). In addition to the foregoing concepts, there is also the concept of maritime uniformity that should not be compromised by the application of state law. Further, a court must also address choice of law principles if two or more states have an interest in the particular

---

[39]     *See* Ex. 8 at paragraphs 4-15.

[40]     Unipec admits it could find no established maritime law governing implied warranties and disclaimers of these warranties. (Dkt. No. 58 at p. 4). There certainly are maritime cases addressing implied warranties and disclaimers. One such case is *Berge Helene*, 830 F.Supp.2d 235.

case.[41] Lastly, courts "generally honor the parties' choice of law decision where there is an agreement in advance." *Id.* at p. 231.

In its motion, Unipec essentially seeks to cherry pick certain provisions from its contract with Total and indirectly enforce those provisions against Oldendorff, a non-party to the contract, so as to avoid any liability for the bad fuel it produced. Unipec chooses to apply Texas law, because of the *Man Engines* case released months after this lawsuit was brought. In trying to enforce contractual provisions against Oldendorff through Texas law, Unipec ignores that its contract was written by Unipec with the express intention of the contract being applied and interpreted in accordance with New York law. Unipec has not cited any New York case that would allow Unipec to proceed as it is doing against Oldendorff.

In this case, Unipec's claims against Total are contractually governed by New York law. It seems odd to apply New York law to Unipec's claims against Total, which could lead to one result, and Texas law to Unipec's claims against Oldendorff, which could lead to a different result, particularly when Unipec is asserting the same contractual disclaimer as to each. Such a result would violate maritime uniformity. Nevertheless, based upon the language of the provision, and the fact that the fuel was off-specification, Unipec cannot succeed on its motion because there is a question of material fact precluding it. Further, as to the issue of conspicuousness, the law from various jurisdictions holds that Unipec's disclaimer is not conspicuous, so the issue of what law to apply for all practical purposes is moot. Even if the Court applies Texas law, Unipec's motion cannot succeed.

---

[41] In contract cases, this process requires an analysis maritime choice of law, which is similar to the Restatement (Second) of Conflicts of Laws, Sections 6 and 188. *See Berge Helene,* 830 F.Supp.2d at 245-49. Unipec did not perform this analysis.

**C.     The Disclaimer is not Conspicuous, at least as to Oldendorff.** Under Section 2-316(2) or (b) of the Uniform Commercial Code ("UCC"), a warranty to exclude or modify the implied warranty of merchantability must mention merchantability, and when the disclaimer is in writing, it must be conspicuous. Uniform Commercial Code § 2.316 (2); *cf. Womco*, 84 S.W. 2d at 278-79. To exclude or modify an implied warranty of fitness, the disclaimer must be in writing and conspicuous. Under Section 1.201(10), "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Uniform Commercial Code § 1.210(10); *cf. Womco*, 84 S.W. 3d at 279. The determination of conspicuousness is for the court. *Id*. "Conspicuous" terms include "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." Uniform Commercial Code § 1.210(10).

When reading the Unipec/Total contract, it is critical to note that all of the clauses in the contract are set out in the same manner in terms of type set, font and heading. Clause 20, entitled "Warranties" is not any different in terms of the way it is set up than clauses 1 through 19, and clauses 21 through 28. Additionally, the heading is "Warranties," and not "Disclaimer of Warranties," or "Exclusion of Warranties." The latter headings would give a reasonable person some idea the provision contains an exclusion or disclaimer, as opposed to provides warranties. The title "Warranties" tells the reasonable person that the provision makes warranties, and not excludes

them, which is in fact wrong. Cases that have addressed similar situations under the UCC have held that such a provision is <u>not</u> conspicuous. *See Cate v. Dover Corp.*, 790 S.W. 2d 559, 559-61 (Tex. 1990)(citing cases from Kentucky, South Carolina, Arkansas, Illinois, Oregon, California and Indiana).[42] In addressing a similar situation, the Texas Supreme Court, by way of example, held that "a written disclaimer of the implied warranty of merchantability made in connection with the sale of goods must be conspicuous to a reasonable person." *Id.* at 563. The Court further held that such a disclaimer contained in text undistinguished in typeface, size or color within a form purporting to grant a warranty is not conspicuous, and is unenforceable unless the buyer has actual knowledge of the disclaimer." *Id*. Such is the case here, based upon the referenced authorities cited above.

Further, there is no evidence that Oldendorff had actual knowledge of any disclaimer in the Unipec/Total contract. Unipec has the burden to show Oldendorff's actual knowledge, and Unipec has not pointed this Court to any such evidence. *Cate*, 790 S.W. 2d at 562 (seller has burden to show buyer had actual knowledge). Based upon the foregoing, the disclaimer being asserted by Unipec as the basis for its motion is not conspicuous, as is required by the UCC, so the disclaimer is not enforceable against Oldendorff. For this additional reason, Unipec's motion should be denied.

---

[42] The cases cited by the Texas Supreme Court are *Massey-Ferguson, Inc. v. Utley*, 439 S.W.2d 57, 59 (Ky. Ct. App.1969)(disclaimer under heading "WARRANTY and AGREEMENT" not conspicuous), *Hartman v. Jensen's, Inc.*, 277 S.C. 501, 289 S.E. 2d 648 (S.C. 1982)(disclaimer under heading "Terms of Warranty" not conspicuous), *Mack Trucks of Arkansas, Inc. v. Jet Asphalt & Rock Co.*, 246 Ark. 101, 437 S.W.2d 459 (1969)(heading title did not suggest exclusion of warranties), *Blankenship v. Northtown Ford, Inc.*, 95 Ill. App. 3d 303, 50 Ill. Dec. 850, 420 N.E.2d 167 (1981)(heading "Factory Warranty" misleading), *Seibel v. Layne & Bowler, Inc.*, 56 Or. App. 387, 641 P.2d 668, rev. denied, 293 Or. 190, 648 P.2d 852 (1982)(heading Warranty" not conspicuous), *Dorman v. Int'l Harvester, Co.*, 46 Ca. App. 3d 11, 120 Cal. Rptr. 516 (3d Dist. 1975)(disclaimer lacked heading "DISCLAIMER OF WARRANTIES"), and *Richards v. Georg Boat & Motors, Inc.* 179 Ind. App. 102, 384 N.E.2d 1084 (3rd Dist. 1979)(disclaimer paragraph should contain the heading "DISCLAIMER OF WARRANTIES").

WHEREFORE, PREMISES CONSIDERED, Plaintiff Oldendorff Carriers GmbH & Co. KG respectfully requests that this Court deny Unipec America, Inc.'s Motion for Partial Summary Judgment, and grant it such other and further relief as justice and equity allow.

                                            Respectfully submitted,

                                  By:  */s/ Richard L. Gorman*
                                          Richard L. Gorman
                                          State Bar No. 00784155
                                          Fed. I.D. 15685
                                          12335 Kingsride Lane #354
                                          Houston, Texas 77024
                                          Telephone: (832) 725-4026
                                          Email: rg@richardgormanlaw.com
                                          Attorney-in-Charge for Plaintiff
                                          Oldendorff Carriers GmbH & Co. KG

OF COUNSEL:

RICHARD GORMAN LAW

**CERTIFICATE OF SERVICE**

On the 7th day of November, 2014, a true and correct copy of this pleading was served on:

Ronald L. White
Lewis, Brisbois, Bisgaard & Smith, LLP
24 Greenway Plaza
Weslayan Tower, Suite 1400
Houston, Texas 77046
*Via Notice of Electronic Filing*

F. William Mahley
Strasburger & Price, LLP
909 Fannin Street, Suite 2300
Houston, Texas 77010-1036
*Via Notice of Electronic Filing*

Timothy W. Strickland
Fowler Rodriguez
Four Houston Center
1331 Lamar, Suite 1560
Houston, Texas 77010-3028
*Via Notice of Electronic Filing*

Joe C. Holzer
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002
*Via Notice of Electronic Filing*

                                              */s/ Richard L. Gorman*
                                              Of Richard Gorman Law

01824/Response.11-07-14