UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **OLDENDORFF CARRIERS GMBH & CO. KG,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-129 |
| | § | |
| **TOTAL PETROCHEMICALS & REFINING USA, INC.**, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Unipec America, Inc.'s Motion Under Fed. Rule Civ. P. 9(b) and Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6). (Doc. No. 24; Memorandum of Law in Support at Doc. No. 26.) Having considered the parties' submissions and the applicable law, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  Background

Plaintiff Oldendorff Carriers GmbH & Co. KG ("Plaintiff") brings this action against Defendant Total Petrochemicals & Refining USA, Inc. ("TP&R"), Defendant Total Specialties USA, Inc. ("TSUI"), Defendant Pelican Island Storage Terminal, LLC f/k/a Pelican Island Storage Terminal, Inc. f/k/a Galveston Terminals, Inc. ("PIST"), Defendant Buffalo Marine Service, Inc. ("Buffalo"), and Defendant Unipec America, Inc. ("Unipec") based on allegedly unusable bunker fuel.

1

As alleged in Plaintiff's Amended Complaint, Defendant TP&R entered into a contract to sell and deliver 385 metric tons of bunker fuel to Plaintiff, which TP&R had purchased from Defendant Unipec. (Doc. No. 11 at 5.) The fuel was to be delivered to the M/V FLORIANA on or about January 17, 2013, transported by Defendant Buffalo from the shore tanks of Defendant PIST in Lake Charles, Louisiana. (*Id*. at 5-6.) In their contract with Plaintiff, TP&R warranted that the fuel would meet the marine fuel quality standards set by the International Standards Organization. (*Id*. at 5.) However, when the crew of the M/V FLORIANA burned the fuel, the fuel filters repeatedly became clogged. The crew determined the fuel was unusable because it was off-specification for density and viscosity, and contained tetradecene and polymeric particulate matter. (*Id*. at 6.) The unusable fuel was offloaded in the United Kingdom, to make room for replacement fuel to be loaded in Spain for the vessel's next voyage. Plaintiff avers that the off-specification fuel could not have been transported back to Lake Charles without incurring great expense and increasing Plaintiff's overall damages. (*Id*.)

The owner of the M/V FLORIANA, MB Floriana Shipping Ltd., settled claims it brought against Plaintiff under the Time Charter Party for Plaintiff's role as charterer in loading the contaminated fuel. (*Id*. at 7.) MB Floriana Shipping Ltd. released its claims against Plaintiff in exchange for $377,000.00. The vessel's owner also transferred to Plaintiff its rights and claims against Defendants. (*Id*. at 7-8.) Plaintiff brought this case against the Defendants and alleged that "the Defendants, individually and collectively, have committed or participated in the commission of some or all of the following: breach of contract, breach of express o[r] implied warranties, negligence, negligence per se, res ipsa loquitor, fraud, fraudulent inducement, misrepresentation, negligent misrepresentation, breach of the warranty of fitness for a particular purpose, civil conspiracy and intentional conduct[.]" (*Id*. at 8.) In addition, Plaintiff alleges that

"one or more of the Defendants is strictly liable to Oldendorff" for failure to properly design, manufacture, or market the bad fuel. (*Id*. at 8-9.) Plaintiff now seeks reimbursement from Defendants of the $377,000.00 it paid to MB Floriana Shipping Ltd., along with additional damages, costs, pre- and post-judgment interest, and reasonable attorneys' fees. (*Id*. at 8.)

## II. Motion Under Rule 9(b)

Defendant Unipec argues that Plaintiff failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). (Doc. No. 26 at 1.) Specifically, Rule 9(b) reads:

> Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Courts have interpreted Rule 9(b) to require a plaintiff to set forth the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 889, 903 (5th Cir. 1997). The plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

In its First Amended Complaint, Plaintiff has listed fraud as one of the possible violations committed by the Defendants, individually or collectively. Unipec argues that "[t]hese allegations are devoid of factual content," and requests "that Plaintiff be ordered to plead fraud with particularity." (Doc. No. 26 at 2.) Plaintiff concedes that it has not stated with particularity the circumstances that constitute its fraud claim against Unipec. (Doc. No. 38 at 1 n.1.) Accordingly, the Court hereby **GRANTS** Defendant Unipec's Motion Under Rule 9(b).

3

Plaintiff's fraud claim is **DISMISSED**. Plaintiff shall have thirty (30) days to amend its Complaint and plead fraud with the requisite particularity.

**III.    Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, 990 (5th Cir.2006).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the grounds for entitlement to relief, including factual allegations that when assumed to be true raise a right to relief above the speculative level. *Bell Atl. Corp. et al. v. Twombly et al.*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor et al.*, 503 F.3d 397, 401 (5th Cir.2007). In other words, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do." *Id.*

Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir.2010); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 664. The court should not strain to find inferences favorable to the plaintiffs or accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir.2005).

In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), the Supreme Court outlined the economic loss rule when it held that a maritime plaintiff may not maintain a tort cause of action "when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id.* at 859; *Turbomeca, S.A. v. Era Helicopters LLC*, 536 F. 351, 345-57 (5th Cir. 2008) (discussing and applying the "*East River* economic loss doctrine"). Unipec argues that Plaintiff "is barred from recovering economic damages by the economic loss rule because the only damage is to the bunker fuel itself and because Oldendorff is a sophisticated commercial party that could have contracted for a remedy, but chose not to do so."[1] (Doc No. 51 at 6.) To some extent, Unipec mischaracterizes Plaintiff's Amended Complaint. Plaintiff seeks to recover for damage to property outside of the contract for bunker fuel. In relevant part, the Amended Complaint states:

> This bad fuel ultimately was not usable by the ship, as it clogged
> the vessel's fuel filters. The full extent of the problems caused by

---

[1] In both Defendant Unipec's Motion to Dismiss and in Plaintiff's Response, the parties devote a portion of their arguments to the scope and contours of the Texas state economic loss doctrine. However, Plaintiff has designated this action as an admiralty claim pursuant to Fed. R. Civ. P. 9(h) (Doc. No. 11 at 4) and Defendant Unipec has raised no issue with the admiralty jurisdiction. (Doc. No. 26 at 2.) The Court will therefore examine and apply the economic loss doctrine as it has developed in admiralty law since the Supreme Court's decision in *East River S. S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). *See generally* 1 Admiralty & Mar. Law § 4-2 (5th ed.) (discussing the application of state law in admiralty).

> the use of the bad fuel are still being sorted out, and it may be that the vessel's main engine has sustained or will sustain damage due to the undesirable particulate matter present in the bad fuel.

(Doc. No. 11 at 4.) The Amended Complaint continues:

> To avoid further engine stoppages, due to the fuel filter becoming clogged, and to try to avoid damage to the vessel's main engine, use of the Unipec, TP&R and/or TSUI supplied fuel was suspended. . . . Ultimately, the bad fuel was offloaded in Falmouth, United Kingdom, so that additional on-specification bunkers could be loaded by the ship in Las Palmas, Spain for the vessel's next voyage to Brazil.

(*Id.* at 6.) By alleging that the fuel filters were clogged, Plaintiff has alleged damage to property beyond the damage to the defective fuel itself; the tort claims based thereon are not barred by the economic loss doctrine. However, the Court agrees with Defendant Unipec that Plaintiff's allegation of *possible* damage to the *engine* falls short of alleging damage to other property as needed to overcome the economic loss rule. The Supreme Court in *Iqbal* stated that the requirement for facial plausibility "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Here, Plaintiff has alleged only that Unipec possibly damaged the engine.

In addition to pleading damage to the fuel filters and possible damage to the engine, Plaintiff also argues that the economic loss doctrine does not bar its claims because Plaintiff "has pleaded mitigation of additional damage to the vessel's engine, which under the general maritime law of the United States is considered damage to other property." (Doc. No. 38 at 4.) In support, Plaintiff cites to *Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*, 639 F.3d 207 (5th Cir. 2011), a case in which the owner of a hydroelectric station brought a tort claim against a tow operator when a collision between two of its vessels caused a barge to block

the intake channel that provided water to the station's generators. The Fifth Circuit in *Catalyst* held that the costs incurred to prevent permanent physical damage can "satisfy the physical damage requirement" to recover for economic loss under general maritime law. *Id*. at 213; *see also State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1985) (denying recovery for pure economic losses in maritime as a "pragmatic limitation on the doctrine of foreseeability"). Plaintiff's argument is essentially thus: because mitigation can be considered physical damage to show that economic loss was sustained, mitigation to prevent damage to *other property* is legally cognizable as *damage to that other property* for purposes of the *East River* economic loss rule. Plaintiff's argument is intriguing but, at the moment, based on insufficient pleading. It is unclear from the Amended Complaint whether Plaintiff's efforts were limited to unloading and replacing the allegedly bad fuel, or whether Plaintiff had to take steps to mitigate damage to property *other than* the fuel. At most, Plaintiff has alleged that mitigation efforts were aimed "avoid[ing] further engine stoppages . . . and to try to avoid damage to the vessel's main engine[.]" (Doc. No. 11 at 6.) As with Plaintiff's allegations of actual damage to the engine, the allegations that it *mitigated* the engine damage do not amount to more than the "sheer possibility" showing that the Supreme Court rejected as insufficient in *Iqbal*. *Iqbal*, 556 U.S. at 678.

Because Plaintiff Oldendorff has alleged damage to property *other* than the bunker fuel – *i.e.*, the fuel filters – the economic loss doctrine does not bar its tort claims. Defendant Unipec's Motion to Dismiss is therefore **DENIED**. However, the Court understands the main thrust of Plaintiff's damage claims to rely on the possible harm to the vessel's engine, but finds these claims insufficiently pled. Plaintiff shall therefore have thirty (30) days to amend its Complaint

to revise its allegations of engine damage and mitigation thereof beyond a mere possibility that Defendants harmed the Plaintiff.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 19th day of November, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE