UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **OLDENDORFF CARRIERS GMBH & CO. KG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:14-cv-129** |
| | § | |
| **TOTAL PETROCHEMICALS & REFINING USA, INC.,** *et al.,* | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Unipec America, Inc.'s Motion for Partial Summary Judgment.  (Doc. No. 58.)  Having considered the parties' submissions and the applicable law, Defendant's Motion is **DENIED IN PART** and is **DEFERRED IN PART**.

**I.     Background**

Plaintiff Oldendorff Carriers GmbH & Co. KG ("Plaintiff") brings this action against Defendant Total Petrochemicals & Refining USA, Inc. ("TP&R"), Defendant Total Specialties USA, Inc. ("TSUI"), Defendant Pelican Island Storage Terminal, LLC f/k/a Pelican Island Storage Terminal, Inc. f/k/a Galveston Terminals, Inc. ("PIST"), Defendant Buffalo Marine Service, Inc. ("Buffalo"), and Defendant Unipec America, Inc. ("Unipec"), based on allegedly unusable bunker fuel.

As alleged in Plaintiff's Amended Complaint, Defendant TP&R entered into a contract to sell and deliver 385 metric tons of bunker fuel to Plaintiff, which TP&R had purchased from

Defendant Unipec.  (Doc. No. 11 at 5.)  In their contract with Plaintiff, TP&R warranted that the fuel would meet the marine fuel quality standards set by the International Standards Organization.  (*Id*.)  However, when the crew of the M/V FLORIANA burned the fuel, the fuel filters repeatedly became clogged.  The crew determined the fuel was unusable because it was off-specification for density and viscosity, and contained tetradecene and polymeric particulate matter.  (*Id*. at 6.)

The owner of the M/V FLORIANA, MB Floriana Shipping Ltd., settled claims it brought against Plaintiff under the Time Charter Party for Plaintiff's role as charterer in loading the contaminated fuel.  (*Id*. at 7.)  MB Floriana Shipping Ltd. released its claims against Plaintiff in exchange for $377,000.00.  The vessel's owner also transferred to Plaintiff its rights and claims against Defendants.  (*Id*. at 7-8.)  Plaintiff brought this case against Defendants and alleged that "the Defendants, individually and collectively, have committed or participated in the commission of some or all of the following:  breach of contract, breach of express o[r] implied warranties, negligence, negligence per se, res ipsa loquitor, fraud, fraudulent inducement, misrepresentation, negligent misrepresentation, breach of the warranty of fitness for a particular purpose, civil conspiracy and intentional conduct[.]"  (*Id*. at 8.)  In addition, Plaintiff alleges that "one or more of the Defendants is strictly liable to Oldendorff" for failure to properly design, manufacture, or market the bad fuel.  (*Id*. at 8-9.)  Plaintiff now seeks reimbursement from Defendants of the $377,000.00 it paid to MB Floriana Shipping Ltd., along with additional damages, costs, pre- and post-judgment interest, and reasonable attorneys' fees.  (*Id*. at 8.)

TP&R subsequently filed a cross-claim against Unipec.  (Doc. No. 48.)  TP&R avers that, if Plaintiff sustained injuries and damages as alleged in its First Amended Complaint, then such injuries and damages were the fault of Unipec.  (*Id.* at 2.)  Even if TP&R is found liable under

any theory, TP&R argues that it is entitled to common law and/or statutory indemnification from Unipec, along with reasonable attorneys' fees and expenses.  (*Id.*)

Unipec filed a Motion to Dismiss Plaintiff's First Amended Complaint, based on Rule 9(b) and Rule 12(b)(6).  (Doc. No. 24.)  The Court granted the Motion in part and denied it in part.  (Doc. No. 69.)  The Court found that Plaintiff had failed to plead its fraud claims with sufficient particularity, and so dismissed them and granted thirty (30) days to refile an amended complaint.  Plaintiffs have not amended.

Now pending before the Court is Defendant Unipec's Motion for Partial Summary Judgment.  (Doc. No. 58.)  Unipec seeks summary judgment on Plaintiff's claim for breach of implied warranty and on Cross-Plaintiff TP&R's claims for common law and statutory indemnity.

## II.     Plaintiff's Claim for Breach of Warranty

Unipec argues that Plaintiff cannot bring its claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose because the sales agreement between Unipec and TP&R disclaimed all warranties.  (Doc. No. 58 at 1.)  According to Unipec, the disclaimer applies to Plaintiff's claims because as a downstream purchaser, Plaintiff can obtain no greater warranty rights than the original purchaser, TP&R.  (*Id.* at 3.)  The key question for the Court, therefore, is the validity of Unipec's disclaimer in its contract with TP&R.

Before reaching the disclaimer's validity, the Court must first determine the applicable law.  Unipec argues its Motion based on Texas law; TP&R disagrees and contends that New York law applies, because the sales agreement contained a choice-of-law provision to that end.  "Although a federal court customarily applies the choice of law rules of the forum in which it is

3

located, the court in maritime cases must apply general federal maritime choice of law rules."
*Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir. 1991) (citations omitted).  Because
there is no dispute that the Court is sitting in admiralty, it is appropriate to proceed to the
maritime choice of law analysis.

### A.    Maritime Choice of Law

"Under federal maritime choice of law rules, contractual choice of law provisions are
generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham
Auctions, Inc.,* 585 F.3d 236, 242 (5th Cir. 2009).  Where the parties to a contract have included
a choice of law clause, the chosen state's law will govern "unless the state has no substantial
relationship to the parties or the transaction or the state's law conflicts with the fundamental
purposes of maritime law."  *Id*. (quoting *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514,
1517 (5th Cir. 1988)).

Here, the sales agreement's choice of law provision meets both prongs of the test.  As to
the first prong, New York has a substantial relationship to the parties because Defendant Unipec
has its principal place of business in New York.  (Doc. No. 11 at 3.)  *See St. Paul Fire & Marine
Ins. Co. v. Bd. of Com'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011) (citing
Restatement (Second) Conflicts of Laws § 187, comment f (state of the chosen law has a
substantial relationship to the parties or the contract when the "state is ... where one of the parties
is domiciled or has his principal place of business."))  As to the second prong, there is no
conflict between New York law and admiralty law on the question of the validity of the contract,
as both sources of law incorporate the Uniform Commercial Code.  *Compare Clem Perrin
Marine Towing, Inc. v. Panama Canal Co.,* 730 F.2d 186, 189 (5th Cir.), *cert. denied,* 469 U.S.
1037 (1984) (noting that the "U.C.C. has been regarded as a source both for admiralty and

federal common law"), *with St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp

820, 826 (S.D.N.Y. 1988) ("New York has adopted the UCC provisions governing the sale of

goods.").  The Court will therefore apply New York law to the question of the disclaimer's

validity.

> **B.     Disclaimer Validity Under New York Law**

Under New York law, in order to "exclude or modify the implied warranty of

merchantability or any part of it the language must mention merchantability and in case of a

writing must be conspicuous, and to exclude or modify any implied warranty of fitness the

exclusion must be by a writing and conspicuous."  N.Y. U.C.C. Law § 2-316 (McKinney).

The warranty disclaimer provision in Unipec's sales agreement with TP&R reads as

follows:

> **20.     WARRANTIES**
> EXCEPT FOR WARRANTY OF TITLE, NO CONDITIONS OR
> WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY,
> FITNESS OR SUITABILITY OF THE OIL FOR ANY PARTICULAR
> PURPOSE OR OTHERWISE, ARE MADE BY SELLER OTHER THAN THAT
> THE OIL CONFORMS, WITHIN ANY TOLERANCES STATED AND TO
> THE EXTENT OF REPRODUCIBILITY AND REPEATABILITY OF THE
> TEST METHOD USED, TO THE DESCRIPTION CONTAINED HEREIN.

(Doc. No. 58, Exh. A at 3.)  It is readily apparent that the warranty meets some of the

requirements of section 2-316, in that the language mentions merchantability and, for the sake of

disclaiming the implied warranty of fitness for a particular purpose, that it is a writing.  The

critical question therefore is whether or not the disclaimer is conspicuous.

The term "conspicuous" is defined as "so written, displayed, or presented that a

reasonable person against which it is to operate ought to have noticed it."  N.Y. U.C.C. Law § 1-

201 (McKinney).  The statute specifies that conspicuous terms include "a heading in capitals

equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the

surrounding text of the same or lesser size" and "language in the body . . . in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." *Id*. "The test, accordingly, is whether a reasonable person would notice the disclaimer when its type is juxtaposed against the rest of the agreement." *Commercial Credit Corp. v. CYC Realty, Inc.*, 477 N.Y.S.2d 842, 844 (1984). "Whether a term is 'conspicuous' or not is a decision for the court." N.Y. U.C.C. Law § 1-201 (McKinney).

The conspicuousness requirement is "satisfied when the disclaimer is set out in capital letters or otherwise drawn to the attention of the non-drafting party. Typically, a drafting party calls attention to a disclaimer by setting it apart from other provisions of the contract and printing it in a distinctive typeface." *Hartford Fire Ins. Co. v. Roadtec, Inc.*, No. 09-CV-06747, 2010 WL 4967979, at *5 (S.D.N.Y. Nov. 29, 2010) (citations omitted). *See, e.g.*, *Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc.*, 620 N.Y.S.2d 442, 442 (1994) (disclaimer in bold type and "readily noticeable" was conspicuous); *Commercial Credit Corp.*, 477 N.Y.S.2d at 844 (disclaimer met standard where it sas "the only boldface print in the only four paragraphs on the first page of the agreement"). Additionally, courts have found warranty disclaimers valid where they are titled with headlines such as "WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY," *Warren W. Fane, Inc. v. Tri-State Diesel, Inc.*, No. 1:12-CV-1903, 2014 WL 1806773, at *8 (N.D.N.Y. May 7, 2014); and "DISCLAIMER OF WARRANTY," *Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00-CV-1657, 2002 WL 31453789, at *2 (S.D.N.Y. Oct. 31, 2002) *aff'd*, 352 F.3d 775 (2d Cir. 2003). By contrast, a warranty is not conspicuous where it is "written in small letters and buried within the body of the paragraph," *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F.Supp. 1495, 1509 (E.D.N.Y. 1984), *rev'd on*

6

*other grounds*, 786 F.2d 72 (2d Cir. 1986), or where it appears in print that is indistinguishable from the remainder of the printing in the contract.  *Laudisio v. Amoco Oil Co.*, 437 N.Y.S.2d 502, 505-06 (Sup. Ct. 1981).

Here, the sales agreement was entirely in capital letters, with each paragraph titled in bold.  Although the language of the warranty paragraph is clear, there is nothing about its typeface, size, or color that sets it apart from the rest of the contract.  Moreover, the disclaimer is paragraph twenty out of twenty-eight, and there is nothing at either the beginning or the end of the sales agreement to direct the reader's attention to it.  Finally, the subject heading for the paragraph is only "WARRANTIES," and does not alert the reader to the fact that the paragraph actually contains a disclaimer by use of the word "disclaimer" or "limitation."  The Court is therefore convinced that the sales agreement's disclaimer is insufficiently conspicuous.  Thus, summary judgment is **DENIED** as to Oldendorff's implied warranty claims.  Insofar as TP&R's Cross Claim for indemnity depends upon the operation of Unipec's disclaimer, summary judgment is also **DENIED**.  However, Unipec also argues that summary judgment is appropriate on TP&R's Cross Claim because general maritime law pre-empts the Texas product liability indemnity statute on which TP&R basis its indemnity claim.  It is to this question that the Court now turns.

**III.     TP&R's Indemnity Claim**

Separate from the question of the disclaimer's validity, Unipec argues that TP&R's cross-claim for indemnity under Texas statute is pre-empted by the general maritime rules governing indemnity.  (Doc. No. 5 at 8-10.)  Unipec's Motion for Partial Summary Judgment attacks only TP&R's statutory indemnity claim, and does not argue TP&R's claim that it is "entitled to common law . . . indemnification from Unipec."  (Doc. No. 48 at 2.)

The Court requires additional briefing on this matter.  Specifically, the Court would like the parties to address whether TP&R's indemnity claims are stated properly under Texas law or, alternatively, should be stated under New York law.  Unipec and TP&R should each submit a brief consisting of no more than five (5) pages by no later than February 13, 2015.  Decision on Unipec's Motion for Partial Summary Judgment as to the pre-emption by general maritime rules governing indemnity is therefore **DEFERRED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 2nd day of February, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE